UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joe Myeress,

        Plaintiff,

—v—

Elite Travel Group USA,

        Defendant.

18-CV-340 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

On May 2, 2018, Plaintiff Joe Myeress filed a motion for default judgment. *See* Dkt. Nos. 12-13. For the following reasons, the Court GRANTS Plaintiff's motion.

**I.  BACKGROUND**

On January 12, 2018, Plaintiff filed a complaint against Defendant Elite Travel Group USA, alleging copyright infringement and the alteration of copyright management information by Defendant. *See* Dkt. No. 1, Compl. ¶¶ 7-26. According to the complaint, Defendant publicly displayed an unauthorized reproduction of a copyrighted photograph of South Florida (the "Photograph"), owned and registered by Myeress, a professional photographer. Compl. ¶ 1. The Photograph was displayed on Defendant's website. Compl. ¶ 10. Defendant owns and operates a travel and tourism website. *See* Compl. ¶¶ 6, 10.

Defendant was served on January 22, 2018. Dkt. No. 6. Defendant did not appear or respond to the complaint, and on April 8, 2018, Plaintiff requested the entry of a default against Defendant. Dkt. No. 7. A certificate of default was filed on April 18, 2018. Dkt. No. 11. On May 2, 2018, Plaintiff moved for default judgment as to Defendant. Dkt. No. 12. Defendant

1

served the motion for default judgment on Defendant and filed an affidavit of service via ECF. Dkt. No. 15.

## II. DISCUSSION

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Rule 54(c) states, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### A. Default Judgment Is Warranted

Here, entry of a default judgment is warranted. Defendant has not entered a notice of appearance or responded to the complaint in any way. It failed to respond when Plaintiff sought default judgment. Even with this history, the court is expected to exercise "sound judicial discretion" in determining whether a default judgment should be entered. CHARLES ALAN WRIGHT ET AL., 10A FED. PRAC. & PROC. CIV. § 2685 (4th ed. 2017). The Court may consider factors such as: the amount of money at stake; whether material issues of fact or issues of

substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; whether the grounds for default are clearly in doubt; how harsh an effect default judgment might have; whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect; and plaintiff's actions throughout. *Id.* Having considered these factors, the Court concludes that default judgment is appropriate in these circumstances.

### B. Plaintiff Establishes a Prima Facie Case for Recovery

The Court must also evaluate damages. The first step is to look to the complaint to determine whether the plaintiff has established a *prima facie* case for recovery. *See Lenard v. Design Studio*, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012). To establish a violation of the Copyright Act, a plaintiff must demonstrate his ownership of a valid copyright and defendant's infringement—that is, copying of original elements of the copyrighted work. *See Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010); *Malibu Media, LLC v. Doe*, No. 15-cv-2624 (ER), 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015). Both requirements are satisfied here. Plaintiff's complaint demonstrates that he owns a valid copyright in the Photograph. *See* Compl. ¶¶ 8-9. Plaintiff has also provided the Court with the Photograph's copyright Certificate of Registration. Dkt. No. 17. And the complaint alleges that Defendant infringed on Plaintiff's copyright by producing and displaying an unauthorized copy of the Photograph on its website. Compl. ¶¶ 10-11.

Plaintiff's allegations also establish a violation of removal of copyright management information under 17 U.S.C. § 1202(b). The Digital Millennium Copyright Act ("DMCA") prohibits doing any of the following "without the authority of the copyright owner or the law"

and with knowledge or reasonable grounds to know that it will "induce, enable, facilitate, or conceal" infringement:

> (1) intentionally remove or alter any copyright management information,
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> (3) distribute ... works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law.

17 U.S.C. § 1202(b).

"Accordingly, to state a valid claim under subsection 1202(b), a plaintiff must allege 1) the existence of CMI [copyright management information] on the products at issue; 2) removal and/or alteration of that information; and 3) that the removal and/or alteration was done intentionally." *Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115 (AJN), 2018 WL 1583037, at *6 (S.D.N.Y. Mar. 27, 2018).

As relevant here, the statutory definition of CMI includes: 1) "[t]he name of, and other identifying information about, the author of a work," § 1202(c)(2); 2) "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright," § 1202(c)(3); and 3) "[i]dentifying numbers or symbols referring to such information or links to such information." § 1202(c)(7).

Plaintiff alleges that "[w]hen the Photograph was first published it contained a watermark on the photograph." Compl. ¶ 20; *see* Compl. Ex. A. Plaintiff alleges that Defendant "intentionally and knowingly removed the watermark identifying Plaintiff as the photographer of the Photograph," and did so "without the knowledge or consent of Plaintiff." Compl. ¶¶ 21, 23, 24. These allegations, which are taken as true after default, are sufficient to establish liability under subsection 1202(b).

4

Given this evidence, the Court finds that Plaintiff has established a *prima facie* case for recovery on both claims.

### C. Plaintiff Provides Sufficient Evidence of Damages

"Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zetian Sys., Inc.*, No. 12 Civ. 2151, 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (internal citations omitted). "Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620, 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais*, 183 F.3d at 155).

To determine the amount of damages, the Court may conduct a hearing, but doing so is not necessary "as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment." *Transatlantic Marine*, 109 F.3d at 111 (internal quotation marks omitted); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (stating that a district judge may, but is not required to, conduct a hearing on the matter of damages).

### a. Copyright Act Claim

Under the Copyright Act, a plaintiff who elects statutory damages is entitled to an award of between $750 and $30,000 per work infringed, "as the court considers just." 17 U.S.C. § 504 (c)(1). Where the infringement is "willful," the maximum permissible award per infringed work rises to $150,000. *Id.* § 504 (c)(2).

The Copyright Act affords the trial court "wide discretion" in setting the amount of statutory damages. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). "Case law reflects a wide range of awards where there have been infringing uses of photographs." *Burch v. Nyarko*, No. 6-cv-7022 (LAP) (GWG) 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007) (collecting cases). In calculating the appropriate statutory damages award, courts in this Circuit consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.
>
> *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010) (citation omitted). Here,

Plaintiff seeks a statutory award of $30,000. Dkt. No. 13 at ¶ 10.

It is established that Defendant willfully infringed Plaintiff's copyright, Compl. ¶ 15, and Defendant's "default and subsequence silence shows a lack of cooperation in determining damages." *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 559 (S.D.N.Y. 2018). "However, not all willful conduct constitutes the kind of truly egregious conduct that justifies maximum damages." *Reilly v. Commerce*, No. 15-cv-5118 (PAE) (BCM), 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016) (quotation omitted). Here, several factors weigh against granting the maximum statutory damages. Plaintiff has not shown that he lost revenue as a result of the infringement, nor has he alleged anything regarding Defendant's profits

as a result of the use of his Photograph. Courts have often refused to award the statutory maximum without any evidence of lost revenue or information about a defendant's profits. *See All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624 (S.D.N.Y. 2011) (collecting cases). Cases where high statutory damages are awarded typically involve defendants who profit significantly despite repeated notices that they are infringing on the plaintiff's copyright. *See, e.g., Ermenegildo Zenga Corp. v. 56th Street Menswear, Inc.*, No. 6-cv-7827 (HB) (GWG), 2008 WL 4449533, at *1 (S.D.N.Y. Oct. 2, 2008). Plaintiff has not provided any evidence of that here.

In analogous cases, courts have awarded statutory damages between $15,000 and $30,000. *See Hollander Glass Texas, Inc.*, 291 F. Supp. at 560 (awarding $25,000 for use of copyrighted image on website); *All–Star Mktg. Grp., LLC*, 775 F.Supp.2d at 627 (awarding $25,000 for use of website images); *Burch v. Nyarko*, 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007) (awarding $15,000 per photograph published on infringer's website); *Getaped.com, Inc. v. Cangemi*, 188 F.Supp.2d 398, 403 (S.D.N.Y. 2002) (awarding $30,000 for willful infringement of copyrighted website code). In light of the caselaw, and the facts of this case, the Court concludes that an award of $20,000 is appropriate.

### b. DMCA Claim

The DMCA permits a plaintiff to recover an award of statutory damages, in the range of $2,500 to $25,000, "for each violation of section 1202." 17 U.S.C. § 1203(3)(B). And Plaintiff may recover under the DMCA, in addition to the Copyright Act, as each statute "protect[s] different interests." *Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014). In awarding statutory damages under the DMCA, courts "consider [several] factors, namely, the difficulty of proving actual damages, the circumstances

of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Id.*

Plaintiff seeks a statutory award of $10,000 under the DMCA claim. Dkt. No. 13 at ¶ 11. Plaintiff's allegations, which are taken as true after default, suggest that Defendant acted willfully in removing Plaintiff's CMI from the Photograph. However, the limited factual information provided to the Court makes it difficult to assess the circumstances of the violation. Additionally, Plaintiff cites to no caselaw to support his request for $10,000. *See* Dkt. No. 13 at ¶ 11 (stating only that Plaintiff requests a statutory award in the amount of $10,000 for the removal of his watermark). The Court concludes that an award of $5,000 is appropriate in this case. *Cf. Sheldon v. Plot Commerce,* No. 15-cv-5885 (CBA) (CLP), 2016 WL 5107072, at *17 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted,* 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (awarding maximum statutory damages of $25,000 per DMCA violation where Defendant continued to use the photograph despite receiving notice from Plaintiff that its conduct represented infringement).

**D. Attorney's Fees**

The Copyright Act expressly permits an award of reasonable attorney's fees. 17 U.S.C. § 505. Similarly, the DMCA permits the court, "in its discretion," to award reasonable attorney's fees to the prevailing party in a civil action under section 1202. *See* 17 U.S.C. § 1203(b)(5). Here, awarding fees and costs to Plaintiff is appropriate. *See Kepner–Tregoe, Inc. v. Vroom,* 186 F.3d 283, 289 (2d Cir. 1999) (affirming award of attorneys' fees and costs where there was willful infringement).

8

Plaintiff seeks attorney's fees of $4,500. Dkt. No. 13 at ¶ 12. Plaintiff's counsel states that the $4,500 is the equivalent of 12.75 hours of billable work multiplied by $350 an hour, plus any fees incurred subsequent to the filing of his default judgment motion. Dkt. No. 13 at ¶ 12.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983)). The hourly rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). "In determining what a reasonable hourly rate is, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties. The Court is also free to rely on its own familiarity with prevailing rates in the District." *Noble v. Crazetees.com*, No. 13-cv-5086 (PAE) (HBP), 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015) (citations omitted). The "fee applicant has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (quotation omitted).

Plaintiff's counsel states that he is the "Managing partner at Liebowitz Law Firm PLLC." Dkt. No. 13 at ¶ 12. And that the "rate of $350/hr. is consistent with (and substantially less than) rates charged by other managing partners in New York city law firms." *Id.* However, Plaintiff's counsel provides no background about how long he has been practicing, or whether he has any expertise relevant to the case. A review of cases in this district and in the Eastern District of New York suggests that courts have approved associate rates of $350, and up to $500 for

9

partners in copyright cases. *See Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE) (KHP), 2018 WL 4762980, at *7 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018) (collecting cases). Plaintiff's counsel has also previously been awarded $350 per hour in this district. *Id.* Accordingly, the Court will award attorney's fees at a rate of $350 an hour for Plaintiff's counsel.

The next issue is the reasonableness of the hours spent on the litigation. Although Plaintiff provided time records in support of his attorney's fees request, the Court believes some of the time reflected is excessive given the work performed in this case, which has essentially only been the Complaint, motion for default judgment, and accompanying materials. As of February of this year, Plaintiff's counsel had "filed over 500 cases in this district alone." *McDermott v. Monday, LLC*, No. 17-cv-9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018). Plaintiff's counsel "routinely represents photographers in this district and uses template documents to file complaints." *Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE) (KHP), 2018 WL 4762980, at *6 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018). The Court is therefore skeptical that conducting research on default judgment and statutory damages in a copyright matter would have taken Plaintiff's counsel over two hours, or that drafting the default judgment materials would have taken over seven hours. Plaintiff's submissions also contained limited legal analysis, and primarily consisted of lengthy string-cites. Certain tasks, such as process of service, serving the notice of the initial pretrial conference, and drafting and filing an affidavit of service, could have been handled by a less experienced attorney at a lower hourly rate. Accordingly, the Court holds that Plaintiff is entitled to only seven hours in billed work. The Court therefore approves counsel's hourly rate of $350 per hour for seven hours at a total attorney's fees award of $2,450.

Plaintiff also seeks costs of $500. Dkt. No. 13 at ¶ 13. Section 505 allows the prevailing party to recover its "full costs" incurred in protection of its copyright. 17 U.S.C. § 505. Plaintiff seeks costs for the court filing fee, the service fee, and the cost of certified mail. Such costs are reasonable. *See Zimmerman v. Portfolio Recovery Assocs., LLC*, 2013 WL 6508813, at *13 (S.D.N.Y. Dec. 12, 2013) ("where ... there is no doubt that there were legitimate expenses in th[e] case, the Court [may] exercise its discretion [and award costs].") (internal quotation marks and citation omitted) (alteration in original). Plaintiff is therefore awarded $500 in costs.

## III. CONCLUSION

Accordingly, Plaintiffs motion for the entry of default judgment is GRANTED. Judgment is entered against Defendant in the amount of $20,000 for the Copyright Act infringement, and $5,000 for the DMCA infringement. The Court also awards $2,450 in attorney's fees and $500 in costs. This resolves Docket Number 13.

SO ORDERED.

Dated: November 14, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge